RIMÔN LAW
www.rimonlaw.com

January 20, 2023

**VIA ECF**

Hon. Stewart D. Aaron
U.S. District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/31/2023

Re:   *Wenger S.A. v. Olivet International, Inc., et al.* - Case No. 1:20-cv-1107(LGS)
      **Joint Letter regarding Walmart Inc.'s document production of January 6, 2023**

Dear Judge Aaron:

Plaintiff Wenger S.A. ("Wenger") and third-party Walmart Inc. ("Walmart") submit this joint letter to address what Wenger believes to be severe deficiencies in the document production of Walmart which was provided on January 6, 2023 (the "Production"). The Production was made pursuant to this Court's Order to produce documents responsive to search term categories agreed upon by Walmart and Wenger.

**Wenger's Position**:

The Production consists of 2,066 documents, whereas 374 of those documents are marked "Non Responsive." *See* Declaration of Joy Jackson of Walmart, dated January 6, 2023, attached hereto as **Wenger Exhibit A** ("Jackson Declaration"). An additional 993 "Non Responsive" documents were not produced at all. *Id*. Walmart also provided a privilege log that lists 89 entries. *See* **Wenger Exhibit B**. The log indicates that 51 documents were redacted, and 38 documents were withheld based on an assertion of attorney client confidentiality.

On January 13, 2023, at 11 am ET, the parties had a meet and confer to discuss the purported deficiencies. At the meet and confer, Walmart's counsel, Ms. Niki Cung, made the following representations with regard to the Production:

1. Ms. Cung confirmed the numbers stated in the Jackson Declaration, including that 993 documents were withheld as non-responsive.

2. The "non-responsive" designation was made by the vendor based on instructions from Walmart's legal department and outside counsel, Ms. Cung. Those instructions, *inter alia*, included that all documents not pertaining to luggage as well as all documents pertaining to vendors other than Wenger should be designated as "non responsive."

3. Ms. Cung further stated that 686 documents in the Production contain redactions.

4. She also confirmed that only 51 documents contain redactions based on an assertion of attorney-client privilege. The privilege assertions were based on instructions given to the vendor that all emails sent to and from either Walmart's legal department or outside counsel should be marked as privileged. None of these documents were reviewed for their substance.

5. Lastly, Ms. Cung expressed the belief that Walmart only has an obligation to produce documents responsive to the subpoena.

For the following reasons, Wenger believes that Walmart's Production is insufficient and corrupted:

1. Wenger has little or no confidence that the vendor made correct privilege and responsiveness determinations given that the reviewers have no knowledge of the case and the issues involved. This concern is propelled by the fact that no name was provided as to who – if anyone – at Walmart reviewed the documents before they were produced.

2. Further, it is a source of great concern to Wenger that the vendor was given the limiting instruction to only designate documents as responsive that pertain to luggage and only to luggage sold by Wenger, not any other vendors. Frankly, those instructions are false and not aligned with the agreed upon search categories. The instructions thus could not have possibly led to an accurate set of responsive documents. Walmart's obligation to produce documents extends to other vendors aside from Wenger and does certainly not only extend to luggage. The limitations in the instructions seem to be based on the flawed understanding of Walmart's counsel that Walmart must only produce documents in response to the subpoena. However, Walmart must produce all document in compliance with the categories agreed on prior to the production. Those categories also include other products, such as apparel or backpacks.

3. Wenger believes that the extensive redactions of over 600 documents is highly problematic given the lack of explanation why those redactions were made and given that most of those redactions do not pertain to an assertion of privilege. To recall, the privilege log only lists 51 redacted documents. Wenger has no insight into why those redactions were made and – given the lack of any privilege assertion – considers them an inappropriate attempt to withhold information. Upon Wenger's request to remove the redactions, Walmart's counsel stated that Walmart would only provide unredacted versions upon a showing from Wenger as to specific gaps in the production. This

    suggestion is unacceptable as it would require Wenger to first review the documents which is impossible due to the redactions which do not allow for a comprehensible review. Moreover, such procedure would put the burden on Wenger to fulfill Walmart's discovery obligations.

4. Similar concerns apply to the privilege designations in the Production. Like the responsiveness determinations, those designations were made exclusively by the vendor with no subsequent quality control. Moreover, the instruction given to the vendor was to exclude all emails sent to and from either the Walmart legal department or outside counsel. The instruction did not provide for any substantive review of the documents. This is clearly unacceptable as not every document sent to or received by the legal department is privileged. Despite these concerns, Walmart's counsel stated that she has no intention to withdraw any of the privilege assertions at this point.

In light of the above, Wenger requests that Walmart make a full production of all responsive, non-privileged documents without applying any inappropriate limitations in the instructions. Whether or not a document is responsive should be based exclusively on the search term categories established among the parties. Wenger further requests Walmart to provide the instructions prior to any subsequent production to ensure those instructions are proper. Lastly, Wenger expects that all supplement productions from Walmart be subject to a quality control by someone with sufficient knowledge of the case. Walmart's failures to enunciate the privilege content other than saying that an attorney was listed on the letter requires this Court to evaluate such alleged privilege content if indeed such documents are primarily for the request of opinion of counsel or actual legal advice by an attorney that requires the entire document to be withheld.

**Walmart's Position**:

Respectfully, Walmart – who is not a party to this case - responds to the above as follows. On January 6, 2023, Walmart provided secured access to Wenger to the document production that resulted from the collection and review process following agreement on appropriate search terms, custodians, and date range[1] (per the Court's Order of November 17, 2022 [Doc. 166] and notice to the Court of same [Doc. 171). Within minutes of receiving the access, Certification of Records, and Privilege Log, without even having reviewed a single document, Wenger replied to Walmart alleging deficiencies with same. During the call to confer regarding the alleged deficiencies, one week after the production, Wenger admitted that its lead counsel had reviewed about 200 of the 2066 documents produced, while associate counsel had reviewed about 100 documents. The production statistics, set out in Exhibit WM2, attached hereto, were discussed. During the call, it was suggested that Wenger complete its review, and should other documents be shown to be responsive, Walmart would consider supplementing the production. On the eve of this letter, Walmart inquired if Wenger had reviewed additional documents and whether Wenger's position had changed; it had not.

---

[1] For the Court's convenience, the agreed terms are reflected in Exhibit WM1, attached hereto.

Wenger's recall of "representation" 2 is incorrect. Instructions to the vendor as to non-responsiveness included proprietary confidential business information regarding vendors other than those listed in the agreed search terms. Should the Court wish to view the instructions, in light of the nature of same being attorney work product, Walmart would request an *in camera* review by the Court.

Regarding Wenger's "representation" 3, the undersigned has no recollection of the mention of 686 documents containing redactions. As set out in the statistics, and as discussed during the call, 223 documents were produced with redactions.

Wenger's "representation" 4 is also incorrect. Every document was reviewed for substance. As evidenced in the Privilege Log, communications seeking legal advice were either redacted or withheld.

Likewise, Wenger's "representation" 5 is incorrect. Instructions were given to the vendor based on Plaintiff's allegations in its Complaint and the responsive pleadings by Defendants, the agreed search terms, the testimony of 3 employees of Walmart who were deposed by Wenger[2], and the third-party subpoena for documents issued to Walmart .

Accordingly, Walmart believes that it has fully complied with the third-party subpoena for documents issued to it and all subsequent orders of this Court regarding same, including complete and responsive production pursuant to the agreed ESI search terms. Wenger's current dissatisfaction is an overreach of same, and Walmart should not be faulted for Wenger's failure to seek other search terms, custodians, or date ranges.

---

[2] So that the Court is aware of the full extent of Walmart's cooperation with Wenger and Walmart's exhaustive attempts to comply with Wenger's myriad requests, Walmart made available for deposition not just 1 but all 3 of its employees who are listed as the appropriate custodians in August and October of 2022. Further, after agreeing upon the search terms, Wenger then took issue with the budget for the collection, review, and production of documents [Doc. 173, Doc. 176, and corresponding Order [Doc. 178]. In the effort to resolve the budget issue and facilitate the production of the documents, the vendor accepted Wenger's "Rimon Wenger Review Estimate" of $6,550.05 [Doc 185]. Despite the actual cost of the collection, review, and production eventually being more than the most recent vendor budget, Walmart sought payment from Wenger of only the agreed amount.

Respectfully submitted,

RIMON, P.C.
By: /s/ *Maxim H. Waldbaum*

Maxim H. Waldbaum
100 Park Avenue 16th Floor
New York, NY 10017
Tel: 917.979.4776
Email: maxim.waldbaum@rimonlaw.com

*Attorney(s) for Attorney for Plaintiff-Counter Defendant Wenger S.A.*


KUTAK ROCK LLP

/s/ *Niki Cung*
Niki Cung, Ark. Bar No. 96153
*Admitted pro hac vice*
KUTAK ROCK LLP
234 E. Millsap Road, Suite 200
Fayetteville, AR 72703
Telephone: (479) 973-4200
Facsimile: (479) 973-0007
Niki.cung@kutakrock.com

*Attorneys for non-party Walmart, Inc.*

cc:    All parties via Notice of Electronic Filing by ECF

ENDORSEMENT: On Friday, February 3, 2023, at 11 a.m. EST, Plaintiff and Walmart shall appear for a telephone conference to address the Joint Letter filed at ECF No. 193. At the scheduled time, the parties shall each separately call (888) 278-0296 (or (214) 765-0479) and enter access code 6489745. In the interim, to the extent documents produced by Walmart contain redactions on grounds other than privilege, such redactions shall be removed. *See Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, 327 F.R.D. 52 (S.D.N.Y. 2018) (Aaron, M.J.). SO ORDERED.
Dated: 1/31/2023