# Amster Rothstein & Ebenstein LLP

405 Lexington Avenue
New York NY 10174

Main   212 336 8000
Fax    212 336 8001
Web    www.arelaw.com

May 28, 2024

*via ECF*

Anthony F. LoCicero
Direct 212 336 8110
E-mail alocicero@arelaw.com

The Honorable Arun Subramanian
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 15A
New York, New York 10007

      Re:   *Wenger S.A. v. Olivet International, Inc.*, Case No. 20-cv-01107
            Letter Motion to Compel

Dear Honorable Judge Subramanian:

Defendant ("Olivet") submits this letter motion seeking the Court's assistance in compelling Plaintiff ("Wenger") to produce: (1) a complete copy of an agreement between Wenger and non-party Swiss Brand Limited Inc. ("Swiss Brand"), which agreement (the "Agreement") resulted in the dismissal with prejudice of a TTAB proceeding between those parties involving their trademarks; and (2) any other agreements between Wenger and any third party relating to Wenger's enforcement of the trademarks asserted in this action ("Third-Party Agreements"). Olivet also seeks its attorneys' fees pursuant to Fed. R. Civ. P. ("FRCP") 37 because Wenger withheld the Agreement and hid its existence, waiting for Olivet to (recently) find out about it on its own. The parties' counsel have met and conferred, and we advised Wenger's counsel that the parties are at an impasse and that Olivet would file this letter motion.

**Motion to Compel.** On June 20, 2020, ***during discovery***, Olivet served Wenger with document requests seeking, *inter alia*, "All documents relating to Wenger's enforcement of its rights in the Wenger Emblem Marks." (Ex. A, RFP No. 15.) Wenger responded on July 29, 2020 (by referencing its response to other RFPs), and agreed to produce responsive "[d]ocuments if found, available and in the possession, custody, or control of Plaintiff[.]" (Ex. B.) Wenger and Swiss Brand had a dispute over Swiss Brand's sale and use of the word "Swiss" and a cross logo on its luggage products. *Wenger S.A. v. Swiss Brand Limited Inc.*, Opp. No. 91241015, Dkt. No. 1 (TTAB May 7, 2018). On June 15, 2021, Wenger and Swiss Brand entered into the Agreement, ***before*** the close of discovery. The Agreement is responsive to RFP No. 15 because it relates to Wenger's enforcement of its marks. At the time of the Agreement, Wenger had two options: (1) under FRCP 26(e), timely produce the Agreement; or (2) under FRCP 34(b)(2)(C), object to RFP 15 by stating that the agreement exist is "being withheld." Wenger did neither. Wenger ***never even told Olivet about the Agreement*** or its dispute with Swiss Brand. Instead, Wenger ran out the clock on discovery, hoping that Olivet would never find out about it.

Wenger has not disputed that the Agreement is responsive to RFP 15. Instead, Wenger faulted Olivet for not learning of the agreement on its own during discovery, arguing: "[i]f the existence of any other proceedings like the ones you identify . . . was so relevant . . ., Olivet . . .

1

would have reviewed public records and dockets, located these actions, specifically identified any such settlement agreement . . ., and specifically sought such production (as it is belatedly doing now).  Counsel for the parties then could have debated its relevance during the discovery period and . . . Olivet could have moved to compel during the discovery period."  (Ex. C.)

Whether Olivet *might* have learned of the *existence* of the Agreement on its own is immaterial.  Because RFP 15 sought documents concerning Wenger's enforcement efforts and the Agreement is relevant to those efforts, Wenger had a duty to promptly produce the Agreement under FRCP 26(e) in June 2021, or at that time, lodge an objection under FRCP 34(b)(2)(C) that that it was *withholding* the Agreement.  Wenger ignored these obligations and cannot credibly shift blame to Olivet.  Wenger should have produced the Agreement long ago as it was in Wenger's custody, possession and control during discovery, and the Agreement is not publicly available.

Wenger's fallback position is that the Agreement is not relevant.  Of course, the time to make this argument was during discovery.  In all events, under FRCP 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  A "relevant matter" under FRCP 26(b)(1) is any matter that "bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  This "broad right of discovery" includes the discovery of settlement agreements.  *ABF Capital Mgmt. v. Askin Capital Mgmt.*, 2000 U.S. Dist. LEXIS 3633, at *7 (S.D.N.Y. Feb. 8, 2000) (collecting cases); *Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, 394 F. Supp. 3d 461, 464 (S.D.N.Y. 2019) (citing a "slew of cases" ordering production of privately negotiated agreements).

Wenger asserts trademark infringement claims against Olivet. The strength of Wenger's trademark is a factor that is assessed in deciding whether there is a likelihood of confusion, and it is well established third-party similarity is relevant to a mark's strength.  *See, e.g., Time, Inc. v. Petersen Publ'g Co*., 173 F.3d 113, 118 (2d Cir. 1999) ("[t]he use of part or all of the mark by third parties" "weakens its overall strength").  Wenger asserted in its dispute with Swiss Brand that the word mark Swiss Brand and related cross logo are similar to Wenger's marks.  *Wenger S.A. v. Swiss Brand Limited Inc.*, Opp. No. 91241015, Dkt. No. 1 (TTAB May 7, 2018).  Based on comments included in the joint stipulation filed in that dispute, it appears that Wenger acknowledged this similarity and consented to Swiss Brand's sale of luggage products bearing the Swiss Brand's word mark and cross logo.  *Wenger S.A. v. Swiss Brand Limited Inc.*, Opp. No. 91241015, Dkt. No. 26 (TTAB Dec. 24, 2021).  Thus, the Agreement and Third-Party Agreements are relevant to whether Wenger's marks are weak.  *Feltenstein v. City of New Rochelle*, 2018 WL 3752874, at *3 (S.D.N.Y. Aug. 8, 2018) ("relevance, for purposes of discovery, is an extremely broad concept.");  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (same).

The Agreement and Third-Party Agreements need not be admissible to be discoverable. FRCP 26(b)(1); *Barclay v. Gressit*, 2013 U.S. Dist. LEXIS 103518, at *9 (D. Me. July 24, 2013) (the FRE "may limit the admissibility of the *settlement agreement* at trial, [but] this does not determine its discoverability").  Any Fed. R. Evid. ("FRE") 408 admissibility concerns can be raised via a motion *in limine*.  As a preview to Olivet's opposition to any such motion, Wenger cannot argue that its marks are strong, and at the same time hide behind FRE 408 to shield itself from the truth that it (seemingly) consented in the Agreement to Swiss Brand's use of similar marks.  *EEOC v. Karenkim, Inc.*, 2011 U.S. Dist. LEXIS 167827, at *13 (N.D.N.Y. Jan. 7, 2011)

("[P]laintiffs **cannot have it both ways**. They cannot bolster a witness's testimony on a subject, expecting evidence of her settlement to be shielded while leaving a potentially false impression with the jury and then **leave the defense hogtied** and unable to comment about any of it.").

Wenger has also avoided answering whether there are other Third-Party Agreements.  (*See* Ex. C.)  Wenger should be compelled to answer this question and produce any such Agreements.

Olivet has good cause for this motion since it only recently learned of the existence of the Agreement and could not have moved to compel any sooner.  Olivet was recently approached by Swiss Brand, who asked Olivet if it would be interested in manufacturing luggage products bearing the Swiss Brand word mark and Swiss Brand's cross logo.  Around May 9, 2024, Swiss Brand told Olivet about its Agreement with Wenger, explaining that Swiss Brand had legal clearance and consent from Wenger to use the Swiss Brand marks.  (Ex. D.)  However, due to a confidentiality clause in the Agreement, Swiss Brand could not show Olivet the Agreement.  Swiss Brand did, however, provide Olivet with a joint stipulation that Wenger and Swiss Brand filed in an opposition proceeding before the TTAB.  In that Stipulation, Wenger and Swiss Brand: (1) agreed that registrations for Swiss Brand's trademarks should issue; (2) referred to the Agreement.  *Wenger S.A. v. Swiss Brand Limited Inc.*, Opp. No. 91241015, Dkt. No. 26 (TTAB Dec. 24, 2021).  Upon learning of the Agreement, Olivet asked Wenger to produce it since it was responsive to RFP 15. When Wenger refused, Olivet promptly filed this motion.

**Motion for Attorneys' Fees.**  There is a concerning developing pattern here.  This is the second time that Wenger has unreasonably withheld a relevant agreement; the first being the SwissTech-Wenger settlement agreement that Wenger was ordered to produce.  (Dkt. 315.) Wenger had a duty to produce the Agreement and abused the discovery process by impermissibly concealing and withholding it until Olivet discovered it on its own.

Equally concerning are the frivolous arguments that Wenger made in resisting production of the Agreement.  Wenger argued that Olivet is "**belatedly** asking for discovery a few weeks before trial but **you have not explained** even once in any of the emails why **Olivet did not raise this issue** during the Court directed lengthy **discovery period**."  (Ex. C.)  But Wenger ignores that Olivet served Wenger with RFP 15 **during the discovery period**.  Wenger's real argument is that Olivet did not make a motion to compel about an agreement that it did not know about.  Wenger's blame shifting approach is unreasonable since Wenger's **concealment of the agreement** is what **caused** this dispute to arise after discovery.

"[T]he court must . . . require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless "opposing party's nondisclosure, response, or objection was substantially justified."  FRCP 37(a)(5).  Here, Wenger's concealment of the Agreement, refusal to produce it when Olivet finally learned of it, and then trying to shift blame to Olivet are not substantially justified.  Thus, Olivet requests that the Court require Wenger to pay its reasonable attorneys' fees incurred in making this motion.  *A.V.E.L.A., Inc. v. The Estate of Marilyn Monroe, LLC,* 2014 U.S. Dist. LEXIS 25385, at *23 (S.D.N.Y. Feb.24, 2014).

4863-0790-2913v.2

In view of the foregoing, Olivet respectfully requests a conference with the Court and/or an order compelling Wenger to produce the Agreement and any Third-Party Agreements.

Respectfully submitted,

AMSTER, ROTHSTEIN & EBENSTEIN LLP

/s *Anthony F. Lo Cicero*

Anthony F. Lo Cicero

The motion to compel is GRANTED. Defendant has shown good cause for the delay in that the prior litigation was the subject of a discovery request but the settlement agreement was not revealed until this month. And though it may not end up being especially relevant, the burden to produce the agreement is minimal. The Court is making no decision as to its admissibility. The motion for attorneys' fees is DENIED. Wenger's failure to disclose the agreement seems to stem from some lack of clarity in Olivet's original discovery request, making an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(iii). The Clerk of Court is directed to close Dkt. 338.

SO ORDERED.

Arun Subramanian, U.S.D.J.
Date: May 31, 2024

4