UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WENGER S.A., <br><br>                                              Plaintiff, <br> -against- <br> OLIVET INTERNATIONAL INC. et al., <br>                                            Defendants. | 20-cv-1107 (AS) <br><br> OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

Plaintiff Wenger owns the word mark "SwissGear" and the Wenger logo, a silver cross within a rounded, red square. *Wenger S.A. v. Olivet Int'l, Inc.*, 2024 WL 36864, at *1 (S.D.N.Y. Jan. 3, 2024) (including an image of the logo). Defendant Olivet manufactured goods with the word mark "SwissTech" and the SwissTech logo, a silver cross within a rounded, red rectangle. *Id.* (same). Wenger has sued Olivet for trademark infringement. Earlier on, this suit also involved Galaxy Brands. Galaxy was SwissTech's intellectual-property licensing company. When Galaxy declared bankruptcy, SwissTech IP Co. was formed to hold the marks. Dkts. 92, 116. SwissTech IP Co. was then named as a defendant in this suit. Dkt. 117. (For convenience, the Court refers to the various SwissTech-related parties as simply "SwissTech" in this opinion.)

In September 2023, Wenger and SwissTech settled their dispute. Dkts. 239, 251, 330 ¶¶ 3–5. In October, Olivet moved for partial summary judgment. Dkt. 244. In January 2024, the Court granted the motion in part and set a trial date in June 2024. Dkts. 299, 301.

Now, just weeks before trial, Olivet has moved for leave to amend its answer and for summary judgment. Dkt. 326. It says the settlement agreement between Wenger and SwissTech resolves the claim against Olivet too. The Court ordered combined briefing on the motion for leave to amend and the motion for summary judgment. Dkt. 321.

## LEGAL STANDARDS

The Court "should freely give leave [to amend the pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). "While leave to amend should be freely granted, the district court has the discretion to deny leave if there was a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 159 (2d Cir. 2015) (cleaned up). There is no allegation of bad faith here, but Wenger says the other three grounds apply.

Typically, futility is judged according to the same standard as that for a motion to dismiss. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). "However, the rule is different where, as here, … the parties have fully briefed the issue whether the proposed amended [pleading]

could raise a genuine issue of fact and have presented all relevant evidence in support of their positions." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001). Olivet seeks to amend and then immediately move for summary judgment, both sides say the agreement should be interpreted according to its terms, and neither side seeks to reopen discovery. So the Court will apply the summary-judgment standard.[1]

As for undue delay, "[w]here a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.' A finding of good cause depends on the diligence of the moving party." *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) (citations omitted).

And on undue prejudice, a "litigant may be 'prejudiced' within the meaning of the rule if the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (internal quotation marks omitted). But delay on its own isn't enough to show prejudice. *Id.*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it could "affect the outcome." *Id.* The Court views the record "in the light most favorable to the non-movant." *Williams v. MTA Bus Co.*, 44 F.4th 115, 126 (2d Cir. 2022) (cleaned up). But if the non-movant will bear the burden of proof on an issue at trial, it must point to some evidence supporting the "essential element[s]" of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–26 (1986).

## DISCUSSION

### I. The amendment would be futile

A summary-judgment motion may fail on the ground that "the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). In general, settlement agreements are not admissible. Under Federal Rule of Evidence 408, a party may not "prove or disprove the validity or amount of a disputed claim" by introducing evidence of a party's "compromising … the claim." But "[t]he court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention

---

[1] Even if the Court applied the motion-to-dismiss standard, it would get to the same result with extra steps. Applying that standard and assuming Olivet's consent argument would survive a motion to dismiss, the Court would permit the amendment. But it would still deny the motion for summary judgment based on the reasoning in this opinion. And that reasoning would also apply to exclude the settlement agreement at trial. So Olivet would get to amend to add its defense, but it couldn't introduce the evidence necessary to prove that defense. Its amendment would thus be futile.

of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b).

Olivet tries to get around this Rule in three ways. First, it says its use falls under the "another purpose" exception. Second, it says the "disputed claim" here differs from the "compromis[ed]" claim in the settlement agreement. Third, it says Wenger waived its objection.

### A. Olivet's proposed use is not for another purpose

The line between permissible and impermissible uses is not always clear. The Second Circuit tried to brighten the line in *PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F.3d 109 (2d Cir. 2008). Like this one, *PRL* was also a trademark case. There, the defendant sought to introduce evidence "that during the course of their settlement discussions, [the plaintiff] gave the [defendant] consent to use a version of the [contested] mark." *Id.* at 112.

*PRL* held that the evidence was admissible to prove the defendant's affirmative defense of estoppel by acquiescence. *Id.* at 114. The court noted that the "exception [in Rule 408(b)] clearly intends to exempt from the absolute prohibition of the Rule evidence focused on issues different from the elements of the primary claim in dispute." *Id.* And it held that the exception applied because "the elements of the [defendant's] claim of estoppel are distinct from the elements of [the plaintiff's] claim of infringement." *Id.* at 116.

Here, Olivet relies heavily on *PRL*, but Olivet doesn't make an estoppel argument. Nor could it: among other reasons, Olivet's estoppel argument would fail because it could not have relied on the settlement agreement—it came after Olivet's allegedly infringing conduct. *See Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 294 (2d Cir. 1999) (listing the "basic elements of estoppel").

Instead, Olivet frames its argument around consent.[2] That framing presents other issues. There is authority to suggest that "[t]he law of the Second Circuit makes clear that 'without consent' is an element of a trademark infringement claim." *Bruce Kirby, Inc. v. LaserPerformance (Europe) Ltd.*, 2020 WL 564071, at *3 (D. Conn. 2020) (Meyer, J.). If consent is an element of Wenger's infringement claim, *PRL* suggests that it is not "another purpose" under Rule 408(b). Olivet hasn't dealt with this argument.

And even setting aside the claim–defense distinction, this settlement agreement still could not come in. Olivet suggests that the settlement agreement conveyed Wenger's consent to Olivet's use. So, Olivet says, it should be allowed to introduce the settlement agreement to enforce it. As a general matter, Olivet is right: parties must, of course, be able to introduce settlement agreements in suits to enforce them, and Rule 408 doesn't bar those uses. *See, e.g.*, Victor J. Gold, *Federal Practice and Procedure (Wright & Miller)* § 5306 (2d ed. 2024). But Olivet still hasn't connected the dots here—it has no enforcement mechanism. As noted, it has no estoppel or other reliance-

---

[2] Olivet's proposed amended answer also seeks to modify its non-infringement defense and add a ratification defense. *See* Dkt. 328-20. Yet Olivet's brief fails to distinguish these grounds, focusing entirely on consent. So the Court focuses on that ground too.

related argument. As a nonparty to the contract, seemingly the only other avenue (and the only one mentioned by the parties) would be to enforce the agreement as a third-party beneficiary.

New York law governs the settlement agreement. Dkt. 328-10 § 11. Under New York law, "[a] party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *State of Cal. Pub. Emps.' Ret. Sys. v. Shearman & Sterling*, 741 N.E.2d 101, 104 (N.Y. 2000) (internal quotation marks omitted). The first element isn't contested, but the other two are.

"A court in determining the parties' intention should consider the circumstances surrounding the transaction as well as the actual language of the contract." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) (citation omitted). On summary judgment, "there are two situations wherein 'no genuine dispute of fact' as to the meaning of a contract can exist: [i] when the language of the contract is unambiguous, or [ii] when the language of the contract is ambiguous but the available extrinsic evidence creates no genuine issue of material fact and permits interpretation of the agreement as a matter of law." *Walmart Inc. v. Cap. One, Nat'l Ass'n*, 2024 WL 1311907, at *7 (S.D.N.Y. Mar. 26, 2024) (cleaned up). Here, the language is straightforward, and neither Wenger nor Olivet cites extrinsic evidence or seeks to reopen discovery.

Olivet was not an intended beneficiary of the settlement agreement, and any benefit it received was incidental. The settlement agreement included a "sell-off clause" that permitted Walmart, pursuant to a preexisting license agreement between SwissTech and Walmart, to sell goods bearing the SwissTech marks for a limited time. Olivet argues that the sell-off clause "confers a benefit on Walmart and its Contractors (i.e., Olivet)." Dkt. 370 at 5. But the sell-off clause never mentions contractors. Instead, the clause says SwissTech "has and had" the right to license its mark to Walmart "pursuant to the License Agreement." Dkt. 328-10 § 3. Olivet then supplies the connection by noting that "the License Agreement … allows Walmart to choose any Contractor." Dkt. 370 at 5. This extra step is the first indication that any benefit to Olivet was incidental, not immediate.

The circumstances and language of the agreement reinforce the point. The settlement agreement settled the claims between Wenger and SwissTech, but Wenger still had live claims against Olivet. To make sure those claims weren't jeopardized, the release clause explicitly excludes Olivet. Dkt. 328-10 § 7. Indeed, that is the only time the settlement agreement mentions Olivet. Olivet emphasizes that the release is distinct from the sell-off rights. But even assuming Olivet is right about some technicalities, the question is intent. It would be exceedingly strange, especially given ongoing litigation, to implicitly intend to confer a benefit on Olivet in one clause while another clause explicitly excludes Olivet from the agreement's principal benefit. "To hold that [Olivet] is … a beneficiary without being so named would defy not only common principles of contract interpretation but also common sense." *In re George Washington Bridge Bus Station Dev. Venture LLC*, 2021 WL 3403590, at *4 (S.D.N.Y. Aug. 4, 2021), *aff'd*, 65 F.4th 43 (2d Cir. 2023).

Nor is Olivet correct about the technicalities. The sell-off clause "acknowledges that SwissTech has and had the full right … to license the SwissTech Marks to [Walmart] pursuant to the License Agreement between SwissTech and Walmart." Dkt. 328-10 § 3. This language is limited to the SwissTech-Walmart relationship; by its terms, it doesn't reach the Walmart-Olivet relationship. And the contract mandates a strict reading: "This Agreement shall not be asserted by any Party to represent or constitute the admission by any other Party of any claim or right, or the existence or non-existence of any fact, except as such right or fact is *explicitly* recognized herein." Dkt. 328-10 § 6 (emphasis added). More to the point, Olivet's insistence that the release provision is distinct from the sell-off clause falls flat. Indeed, the sell-off clause specifically notes that each "SwissTech Released Party (as defined in Section 7 below)" is freed from liability relating to sales of remaining inventory, and Section 7 is the release provision that excludes Olivet.

The fact that the sell-off clause can't be read to consent to Olivet's use further shows that the agreement didn't intend to benefit Olivet. But it also means that even if Olivet could get around Rule 408, the agreement could not show the consent necessary to defeat Wenger's claims. *See* Restatement (Third) of Unfair Competition § 29 & cmt. a (1995) (noting that "the scope of the consent is determined according to the general principles applicable to the interpretation of agreements").

At bottom, Olivet has not carried its burden to show a genuine dispute as to whether "the language of the contract … clearly evidences an intent to permit enforcement by [Olivet]." *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 485 N.E.2d 208, 212 (N.Y. 1985). Because Olivet has no right to enforce the sell-off clause—even if it conveyed some bank-shot consent—it is merely a representation that Wenger made as part of a settlement agreement. So it is inadmissible under Rule 408.

### B. The claims aren't different

Olivet's backup argument is that the "disputed claim" between itself and Wenger is not the claim "compromise[d]" by SwissTech and Wenger. That is, Olivet is not SwissTech, and their conduct was different: SwissTech was the licensor while Olivet was the manufacturer. Those things are true, but they are not enough to put the agreement beyond Rule 408's grasp.

The case law is relatively thin on the meaning of "claim." Neither side has cited relevant binding authority. Olivet cites *Starter Corp. v. Converse, Inc.*, 170 F.3d 286 (2d Cir. 1999). But that case is similar to *PRL*: it addressed whether a settlement can be introduced for an estoppel defense to a trademark-infringement claim. *Id.* at 292–94. It does not shed light on whether an infringement claim against a licensor is different from an infringement claim against a manufacturer.

Olivet also cites *Williams v. Regus Mgmt. Grp., LLC*, 2012 WL 1890384 (S.D.N.Y. May 15, 2012). That opinion is persuasive but inapt. There, a plaintiff sought to establish his employer's knowledge of his protected activity, which was necessary for his retaliation claim. *Id.* at *4. To do so, he introduced evidence of his own counsel's communications to his employer about his employment-discrimination claim. *Id.* at *5. On their face, discrimination and retaliation are separate claims; they at least have different elements, unlike the two infringement claims here. But more

fundamentally, the plaintiff sought to introduce only his own settlement communications to prove merely the fact of the communications. That scenario does not implicate Rule 408's principal concern: that one side will have things it said while seeking peace thrown back in its face. *See* Tracy Bateman et al., *Federal Procedure* § 33:233 (L. ed. 2024). So neither of Olivet's cases supports its argument.

Considering the case law more generally, "[m]ost [courts] do agree that 'claim' does not mean 'legal claim' and that, as a result, the dispute being settled need not be the one being tried in the case where the settlement is being offered in order for Rule 408 to bar its admission." *Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 297 (5th Cir. 2010) (cleaned up). From that premise, there are two general approaches. On the one hand, several circuits have adopted "a loose 'transactional' test." *Id.* That is, if "different disputes arise out of the same transaction," efforts to settle one dispute can't be introduced as proof in the other dispute. *Id.* (internal quotation marks omitted). On the other hand, at least two circuits "look[] to the spirit and purpose of the rule and decide[] whether the need for the settlement evidence outweighs the potentially chilling effect on future settlement negotiations." *Id.* at 298 (internal quotation marks omitted).

The Second Circuit has hinted at aspects of both approaches. *See Hawthorne v. Eckerson Co.*, 77 F.2d 844 (2d Cir. 1935) (A. Hand, J.) (holding, before the Federal Rules of Evidence were adopted, that "[s]ettlements have always been looked on with favor, and courts have deemed it against public policy to subject a person who has compromised a claim to the hazard of having a settlement proved in a subsequent lawsuit by another person asserting a cause of action arising out of the same transaction"); *Starter*, 170 F.3d at 293 (noting that, in exercising its "broad discretion," the Court "should weigh the need for such evidence against the potentiality of discouraging future settlement negotiations" (internal quotation marks omitted)).

Under either approach, the Court would exclude the settlement agreement. It plainly arises out of the same transaction: Wenger's claims against Olivet are simply downstream of its claims against SwissTech.

And the Rule's "spirit" points in the same direction. Olivet says excluding the agreement here would permit Wenger to renege on its promises, discouraging future settlements. That argument presupposes that Wenger made any promise to Olivet. As explained in the previous section, it did not. So although Olivet "need[s]" the evidence for its consent defense, that defense is weak, and its need is outweighed by its frontal assault on settlement incentives, as explained below.

Olivet's thin distinction based on the identity of the defendant and slightly different conduct is untenable. In any multiparty case, each party's identity and conduct will be slightly different. But they are all parties to the same suit because their conduct is, to some extent, connected. Here, Olivet seeks to introduce the settlement agreement precisely because it reads a clause in the agreement to address the part of Olivet's conduct that is connected to SwissTech's. In other words, Olivet is arguing that the claims are different while seeking to introduce evidence that is relevant only to the extent that the claims overlap.

6

Not only is this argument logically precarious, but it would also practically eliminate settlements between individual parties in multiparty cases. If a settlement could be introduced against a settling party on a claim with the same elements in the same case, bilateral settlements would be nearly pointless, or at least extremely risky. For this reason, the treatises are unanimous that, at least in general, Rule 408 prohibits one party's use of another party's settlement negotiations or agreement in the same case. *See* Robert P. Mosteller et al., *McCormick on Evidence* § 266 (8th ed. 2022); Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:59 (4th ed. 2023); Clifford S. Fishman & Anne Toomey McKenna, *Jones on Evidence* §§ 22:18–22:21 (7th ed. 2023); Mark S. Brodin, *Weinstein's Federal Evidence* § 408.04 (2d ed. 2024); *Federal Procedure* §§ 33:233, 33:235.

So the disputed claim here is sufficiently close to the compromised claim in the settlement agreement to fall under Rule 408.

### C. Wenger hasn't waived its objection

Finally, in its reply brief, Olivet makes the new argument that Wenger waived its Rule 408 objection. It points to one of the parties' pretrial stipulations, which were submitted between the opposition and reply briefs. That stipulation refers to the settlement agreement and includes some of its specific terms. Olivet then takes the logical leap that Wenger has opened the door because "Wenger will rely on the fact that a co-defendant settled the case and agreed to stop using the [SwissTech logo] pursuant to that settlement." Dkt. 370 at 1 (internal quotation marks omitted). But there's no indication that Wenger will in fact seek to introduce the settlement at trial, and it's unclear why it would do so. If they do open the door in that way, Olivet can make an application at that time. But it would be a stretch to construe this stipulation as waiving Wenger's objection. *See Doe v. Marsh*, 105 F.3d 106, 111 (2d Cir. 1997) ("[A] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." (internal quotation marks omitted)).

## II. Olivet was not diligent

Aside from futility, the Court also denies the motion based on undue delay. The scheduling order in this case required that amendments to the pleadings be made within 75 days of the start of discovery. Dkt. 145 ¶ 6. And it set a deadline for summary-judgment motions in October 2023. Dkt. 237. As noted above, Olivet must show "good cause" for varying from this schedule, which requires a showing of "diligence."

But Olivet dragged its feet. It first learned of the settlement agreement in September 2023. *See* Dkt. 330 ¶¶ 3–5. It first asked Wenger for a copy of the agreement in January 2024. *Id.* ¶ 7. Wenger consented to producing a redacted version at that time but never sent it over. *Id.* Olivet says it was constantly following up, but it didn't file a motion to compel until May 2024—despite knowing since January that trial would be in June. *See id.* ¶¶ 8–17. Although Olivet might well have legitimate complaints about Wenger's conduct, Olivet needed to seek the Court's intervention earlier. Delaying its motion to compel for eight months—until the month before trial—and then seeking to continue the trial and file for summary judgment instead smacks of delay tactics.

7

### III. Fees

Lastly, Wenger says the Court should award its fees incurred in responding to this motion. It cites cases awarding fees based on frivolous arguments and arguments made in bad faith. Although Olivet's motion fails, its arguments weren't frivolous and there's no evidence of bad faith. So Wenger's request is denied.

## CONCLUSION

For these reasons, Olivet's motion for leave to amend its answer is DENIED. The Clerk of Court is directed to close Dkt. 326.

The Clerk of Court is directed to restrict viewing of this opinion to the Court and the parties. By June 24, 2024, the parties shall propose redactions to permit public viewing of this opinion.

SO ORDERED.

Dated: June 10, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge